932 P.2d 158 (1997)
131 Wash.2d 345
DIOXIN/ORGANOCHLORINE CENTER, Columbia River United, and Puget Sound Alliance,
v.
POLLUTION CONTROL HEARINGS BOARD, Washington State Department of Ecology, and Mary Riveland, in her official capacity as Director of Washington State Department of Ecology, Respondents,
Boise Cascade Corp., Georgia-Pacific Co., ITT Rayonier, Inc., James River II, Inc., Longview Fibre Co., and Scott Paper Co., Appellants.
No. 63262-6.
Supreme Court of Washington, En Banc.
Argued May 30, 1996.
Decided March 6, 1997.
*159 John M. Groen, Richard M. Stephens, Bellevue, for Amicus Curiae on Behalf of Building Industry Association of Washington.
Victor Wolski, Sacramento, CA, for Amicus Curiae on Behalf of Pacific Legal Foundation.
Stoel, Rives, Boley, Jones & Grey, Donald B. Myers, Ramona Monroe, Seattle, for Appellants.
Sierra Club Legal Defense Fund, Patti Goldman, Todd True, Seattle, Christine Gregoire, Attorney General, Ronald L. Lavigne, Jr., Assistant, Olympia, for Respondents.
SANDERS, Justice.
We hold that actions which are categorically exempt from review under the State Environmental Policy Act are in fact exempt.
Boise Cascade Corporation and other pulp and paper mills (mills) appeal a superior court order remanding reissuance of their mills' waste water discharge permits to the Pollution Control Hearings Board to determine whether these permits constitute a "major action" under the State Environmental Policy Act (SEPA), RCW 43.21C.110(1)(a), notwithstanding their categorical exemption. WAC 197-11-855(1) (hereinafter "categorical exemption"). The mills claim this is error, asserting "categorical exemption" means just that. Because of the great public importance for a reliable system of categorical exemptions, and the need for the orderly and cost effective administration of SEPA, we granted direct review and reverse, holding actions classified as categorically exempt are immune from SEPA review.
Although this case is now moot, the issues have been well briefed and we reach the merits because the reliability of the system of categorical exemptions under SEPA is a matter of continuing and substantial public interest requiring our determination.

STATEMENT OF FACTS
The Pollution Control Hearings Board (PCHB) and the Thurston County Superior Court did not reach any of the factual issues or make any factual determinations regarding the SEPA claims. The SEPA issues were decided below solely as a matter of law.

Procedural History
The procedural history of this case is long and convoluted. The Department of Ecology (hereinafter "Ecology") reissued National Pollutant Discharge Elimination System (NPDES) permits to the mills between May and July 1991. Both the mills and environmental advocacy groups (hereinafter "Dioxin") cross-appealed various aspects of the permits. This is the third time issues involving these particular permits have come before this court.
*160 In the first case, Simpson Tacoma Kraft Co. v. Department of Ecology, 119 Wash.2d 640, 835 P.2d 1030 (1992), the mills challenged Ecology's adoption of the numeric water quality standards and permit conditions limiting dioxin levels. The mills appealed to the PCHB and Dioxin intervened. The PCHB vacated the standards set by Ecology limiting dioxin levels in the mills' permits. Ecology then appealed to the Thurston County Superior Court which affirmed the PCHB and invalidated the dioxin limitation rule because Ecology failed to follow proper rule-making procedures. This court accepted direct review and affirmed. Simpson, 119 Wash.2d 640, 835 P.2d 1030.
In the second case, Dioxin/Organochlorine Ctr. v. Department of Ecology, 119 Wash.2d 761, 837 P.2d 1007 (1992), Dioxin/Organochlorine Center, Columbia River United, Inc. and Puget Soundkeeper Alliance (collectively "plaintiffs" or "Dioxin I") commenced a two-pronged attack alleging that Ecology improperly failed to conduct a SEPA review prior to issuance of the NPDES permits to the mills. In its first prong Dioxin filed a complaint in Thurston County Superior Court seeking declaratory and injunctive relief. The superior court dismissed Dioxin's complaint for failure to exhaust administrative remedies. This court accepted direct review and affirmed, dismissing the case. Dioxin I, 119 Wash.2d 761, 837 P.2d 1007.
But under the second prong Dioxin appealed issuance of one permit to the Pollution Control Hearings Board (PCHB), as a protective measure. The instant case results from this second prong of Dioxin's attack. Dioxin challenged Ecology's reissuance of one mill's NPDES permit on SEPA grounds and intervened in the other mills' NPDES permit appeals. On May 15, 1992, the PCHB determined that DOE's regulatory exemption for waste discharge permits "[was] reasonably consistent with SEPA as a matter of law," and granted partial summary judgment to Ecology on the SEPA claims. Clerk's Papers at 11, Partial Summ. J. Order, PCHB No. 91-140 at 19-20 (5/15/92). Dioxin then appealed PCHB's SEPA ruling to the Thurston County Superior Court which ruled that a categorical regulatory exemption would not prevent SEPA review if shown reissuance of the permits is a major action; i.e., having a probable significant, adverse environmental impact. That court remanded to the PCHB to make the factual determination of whether the reissuance of these permits was a "major action" with significant adverse environmental impacts notwithstanding the categorical regulatory exemptions. The mills sought and obtained direct review from this court.
No factual findings have been made as to whether the reissuance of these permits would be "major actions" having probable significant, adverse environmental impacts.

MOOTNESS
Since the permits at issue have either expired or will soon expire, and the Legislature has amended SEPA to categorically exempt the reissuance of NPDES permits by statute,[1] the parties agree this case is technically moot as "A case is technically moot if the court cannot provide the basic relief originally sought," Snohomish County v. State, 69 Wash.App. 655, 660, 850 P.2d 546 (1993) (citing In re Swanson, 115 Wash.2d 21, 24, 804 P.2d 1 (1990)), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994), "or can no longer provide effective relief," Snohomish, 69 Wash.App. at 660, 850 P.2d 546 (citing In re Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983)). However this does not conclude our inquiry.
*161 We may decide a moot case if it involves matters of continuing and substantial public interest. In re Swanson, 115 Wash.2d at 24, 804 P.2d 1.
In determining whether or not a sufficient public interest is involved, a court should consider:
(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.
Snohomish, 69 Wash.App. at 660, 850 P.2d 546 (quoting In re Swanson, 115 Wash.2d at 25, 804 P.2d 1).
Ecology and Dioxin take a narrow view of the issue and argue that determination of this case will not satisfy the second and third criteria because reissuance of NPDES permits will never be challenged under the State Environmental Policy Act again. Ecology contends that since there have been only two other reported cases involving categorical exemptions in the last 13 years, issues involving categorical exemptions are unlikely to recur. On the other hand, the mills argue the Thurston County Superior Court's decision in this case undermines the system of categorical exemptions by inviting case by case review of otherwise categorically exempt actions.
Applying the Swanson criteria, we find: (1) this is a matter of substantial public importance concerning public agency approval of public and private activities affecting the environment; (2) an authoritative determination by this court would provide project proponents, opponents, members of the public, agencies, and lower courts important guidance as to whether case by case review of proposals that fit within valid categorical exemptions is available; and (3) the issue is likely to recur because many permit applications are for categorically exempt activities and, thus, the superior court's action in this case is likely to encourage claims that projects are "major actions" requiring SEPA review. The uncertainty likely to result if "as applied" challenges are brought by new cases could take this court years to resolve, at tremendous expense to all those concerned. Furthermore, we initially accepted review in this case because of the important and unsettled question of whether categorically exempt actions, not merely NPDES permits, are subject to SEPA review and because the substantive issues have been well briefed by the parties and the advocacy is of high quality. Compare Snohomish County, 69 Wash.App. at 661, 850 P.2d 546. Therefore, we consider this matter to be of continuing and substantial public interest warranting final resolution and proceed to the merits for essentially the same reasons the Court of Appeals did so in Snohomish County, 69 Wash.App. at 660-61, 850 P.2d 546.

Standard of Review
The Thurston County Superior Court interpreted the SEPA statute as requiring case by case review of "major actions" without regard to their categorically exempt status. A court's interpretation of a statute is inherently a question of law; this court reviews questions of law de novo. Smith v. Continental Casualty Co., 128 Wash.2d 73, 78, 904 P.2d 749 (1995).

SEPA
The central SEPA requirement is a threshold determination of environmental significance and, if an action is significant, the preparation of an environmental impact statement (EIS). RCW 43.21C.030. An EIS "shall be prepared ... for ... major actions having a probable significant, adverse environmental impact." RCW 43.21C.031 (Supp. 1995). However, "[a]ctions categorically exempt under RCW 43.21C.110(1)(a) do not require environmental review or the preparation of an environmental impact statement under this chapter." RCW 43.21C.031 (Supp.1995).
The Department of Ecology was directed by the 1983 SEPA amendments to adopt "uniform rules and guidelines" interpreting and implementing SEPA. RCW 43.21C.110(1) (amended by Laws of 1983, ch. 117, § 7). That statute defines Ecology's rule-making authority to include, but not be limited to:

*162 Categories of governmental actions which are not to be considered as potential major actions significantly affecting the quality of the environment.... The types of actions included as categorical exemptions in the rules shall be limited to those types which are not major actions significantly affecting the quality of the environment. The rules shall provide for circumstances where actions which potentially are categorically exempt require environmental review. An action that is categorically exempt under the rules adopted by the department may not be conditioned or denied under this chapter.

RCW 43.21C.110(1)(a) (Supp.1995) (emphasis applied to language added by amendment (Laws of 1995, ch. 347, § 206)).[2]

SEPA Rules
RCW 43.21C.110(1)(a) categorically exempts a proposal if it fits within any of the provisions "in Part Nine of [the SEPA] rules," WAC 197-11-305(1), unless (1) the proposal is not exempt under WAC 197-11-908, which applies to "environmentally sensitive areas," WAC 197-11-305(1)(a), or (2) the proposal is a segment of a series of actions categorically exempt in part or is a segment of a series of exempt actions that together may have a probable significant, environmental impact. WAC 197-11-305(1)(b)(i), (ii).
Categorical exemptions are set forth in WAC 197-11-800 through 890. Such actions do not require threshold determinations of environmental significance or preparation of an EIS, subject to the limitations of WAC 197-11-305. WAC 197-11-800. These categorical exemptions cover a broad range of government agency actions approving public and private activities, such as:
(1) Minor new constructionFlexible thresholds.
....
(b) The following types of construction shall be exempt, except when undertaken wholly or partly on lands covered by water:
(i) The construction ... of four dwelling units.
(ii) The construction of a barn....
(iii) The construction of an office, school commercial, recreational, service or storage building with 4,000 square feet of gross floor area....
(iv) The construction of a parking lot designed for twenty automobiles.
(v) Any landfill or excavation of 100 cubic yards....
....
(2) Other minor new construction.... bus stops, ... minor road ... improvements,... septic tank installations,... landscaping [and boundary markers].
(3) Repair, remodeling and maintenance activities.
....
(4) Water rights.
....
(5) Purchase or sale of real property.
(6) Minor land use decisions .... short platting ... [and minor zoning] variances.
(7) School closures. ...
(8) Open burning. ...
(9) Variances under the Clean Air Act ...
(10) Water quality certifications. ...
(11) Activities of the state legislature. ...
(12) Judicial activity. ...
(13) Enforcement and inspections. ...
(14) Business and other regulatory licenses. ...
(15) Activities of agencies. ...
(16) Financial assistance grants. ...
....
(24) Utilities. ...

*163 (25) Natural resources management.... [such as small grazing, agricultural or forest leases, leases of moorings for pleasure boats].
WAC 197-11-800.
The SEPA rules also specify a broad list of exemptions and nonexemptions that apply to specific state agencies and are also subject to the limitations of WAC 197-11-305. WAC 197-11-810. For example, most licensing activities of the Department of Licensing are exempt from SEPA review, WAC 197-11-820; but the Department of Labor and Industries undertakes a "major action" when it adopts safety regulations addressing noise standards, WAC 197-11-825; the Department of Natural Resources can initiate forest closures in light of extreme fire hazards and issue permits to use power equipment on forest lands without SEPA review, WAC 197-11-830; the Department of Fisheries can establish fishing seasons and catch limits, WAC 197-11-835; the Department of Game can issue hunting licenses, permits, or tags, WAC 197-11-840; but the Department of Social and Health Services may not approve final plans for construction of a nursing home or alcoholism treatment center without taking a "major action," WAC 197-11-845.

Analysis of SEPA
The mills and the amici argue SEPA review is not required for an individual action that is properly categorized as exempt under a valid regulation, citing RCW 43.21C.031. We agree.
The mills reason: (1) an action may be challenged for failure to fit within a categorical exemption; (2) a categorical exemption itself may be challenged as overbroad on its face for including "types of actions" that are "major," RCW 43.21C.110(1)(a); (3) but to allow an ad hoc factual inquiry into the environmental impact of a specific proposal or permit approval action is inconsistent with the requirements of RCW 43.21C.110(1)(a). The nub of the mills' argument is "types of actions" may be reviewed to determine if the exemption itself is overbroad on its face as to the categories exempted, but individual "actions" within a properly exempt category may not be reviewed on a case by case basis under SEPA. On the other hand, Dioxin argues it is entitled to challenge the validity of a categorical exemption "as applied" to any specific permit if the issuance of the permit allows an activity (in this case, discharges of dioxin) which is assertedly a "major action" having a probable significant adverse environmental impact, rather than challenging the regulation as overbroad on its face.
The parties cite basically the same statutory provisions, particularly RCW 43.21C.110(1)(a), and legislative history in support of their respective positions. See Washington State Comm'n on Envtl. Policy, Ten Years' Experience With SEPA: Final Report 106 (June 1983) (hereinafter "Final Report"), and Kenneth S. Weiner, Section-by-Section Summary of SSB 3006, reprinted in Richard L. Settle, The Washington State Environmental Policy Act: A Legal and Policy Analysis App. B at 291 (1987). The mills further rely on two Court of Appeals cases: Snohomish County v. State, 69 Wash.App. 655, 668-69, 850 P.2d 546 (1993), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994), and Concerned Citizens of Hosp. Dist. No. 304 v. Board of Comm'rs of Pub. Hosp. Dist. No. 304, 78 Wash.App. 333, 345 n. 1, 897 P.2d 1267 (case by case SEPA review not available), review denied, 127 Wash.2d 1024, 904 P.2d 1157 (1995). Dioxin relies on two other cases: Downtown Traffic Planning Comm. v. Royer, 26 Wash.App. 156, 612 P.2d 430 (1980), and Noel v. Cole, 98 Wash.2d 375, 655 P.2d 245 (1982).
The mills claim Downtown Trafficand Noelare no longer applicable because each was decided prior to the 1983 SEPA amendments. Dioxin claims the legislative history of the 1983 amendments to SEPA supports the continued authority of Downtown Trafficand Noel, so courts continue to have authority to review categorical exemptions "as applied." Dioxin attempts to distinguish Snohomish claiming that it is based upon statutory categorical exemptions rather than administrative categorical exemptions. Additionally, Dioxin dismisses Concerned Citizens as dicta. Dioxin further argues that the purposes of categorical exemptions, reduction of paperwork, expense, and delay are served *164 by the 1983 SEPA amendments because they allow agencies to rely on exemptions, but courts to review those exemptions "as applied" on a case by case basis. Dioxin argues if it can prove the NPDES permit approvals are "major actions," it is entitled to "partial invalidation" of the categorical exemption. The mills have the best of this argument.
In Downtown Traffic, the Court of Appeals, Division One, reviewed a City of Seattle proposal to establish exclusive bus lanes on two downtown streets and held the proposal could not be exempt (under a categorical exemption "guideline" for minor construction) from SEPA review, if it would have the allegedly major adverse environmental effect asserted by opponents.
In Noel, this court found a categorical exemption "guideline" for a large logging project as overbroad. The parties conceded the exemption was overbroad "as applied." It exempted all timber sales regardless of size or effect. This court said in a footnote: "At the least, administratively created exemptions [guidelines] must be construed to apply only when the particular action in question is not a major action significantly affecting the environment." Noel, 98 Wash.2d at 381 n. 2, 655 P.2d 245 (citing Downtown Traffic, 26 Wash.App. at 165, 612 P.2d 430).
However, in 1981, after Downtown Traffic, the Legislature created the Commission on Environmental Policy to review SEPA. See Final Report, supra. "The most obvious indicator of legislative intent, other than the words of the statute itself, is the Commission's own report and explanation of its proposals." Id. at 19; accord Waterford Place Condominium Ass'n v. City of Seattle, 58 Wash.App. 39, 49, 791 P.2d 908, review denied, 115 Wash.2d 1019, 802 P.2d 126 (1990). The rules were proposed with the legislation, so "[t]he rule recommendations themselves, therefore, contribute to an understanding of legislative intent." Final Report at 20. The Final Report expressly addresses the question at hand and supports the position advanced by the mills:
The amendment ... stat[es] that categorically exempt actions do not require environmental review. The amendment was intended to clarify and emphasize the legislative intent since 1974 ... The legislative history and the rejection of proposed committee amendments make clear that agencies are not required to examine whether a given proposal has a significant impact ... even though some recent cases have implied that agencies might have to do so [an apparent reference to Downtown Traffic and Noel] (the reason for having a system of categorical exemptions is to eliminate the need for individual environmental review).
Final Report at 29 (emphasis added).
Some confusion has arisen in situations where courts have been confronted with proposals having significant impacts, but an agency asserts the proposal is categorically exempt. In such cases, the courts are faced with two questions (the answer to the first will usually resolve the issue): (1) does the proposal fit within the asserted exemption ... and if so, (2) does the type of action exempted by the rules result in significant adverse environmental impacts. If the answer to the second question is affirmative, the exemption in the rules would be overbroad. Judging by the tone (not the results) of a few judicial opinions, the state courts have not always recognized that the importance of a reliable and efficient system of categorical exemptions is such that it would be better in the rare instance to find an exemption overbroad, than to require individual case-by-case environmental review on every governmental activity. Such individual review would defeat the very purpose of having categorical exemptions and would create an immense paperwork, bureaucratic, and cost burden on government and taxpayers.
Settle, supra, App. B at 306 (emphasis added).
Both parties cite the colloquy on the senate floor between Senator Bottigner and Senator Bluechel, the commission chairman, on the categorical exemptions provisions of Senate Substitute Bill 3006.
This exchange indicates that the Legislature intended that applicants, not just agencies *165 (as Dioxin argues), be able to rely on the system of categorical exemptions.[3] Furthermore, the distinction drawn in the colloquy between a "type of action" and a "specific proposed action" further supports the view that case by case review of specific permit approvals, otherwise categorically exempt, was not legislatively intended.
The preface to the proposed rules rejected opening categorical exemptions to "proposal-by-proposal" impact consideration. Preface to the Proposed Rules, Final Report at 86.[4]
The section by section analysis of the proposed SEPA rules suggests the commission, and the Legislature considered Downtown Traffic to be wrongly decided, and the 1983 amendments to SEPA a remedy to reverse the ambiguities caused by Downtown Traffic. "One well recognized indication of legislative intent to clarify, rather than change, existing law is doubt or ambiguity surrounding a statute." Bowen v. Statewide City Employees Retirement Sys., 72 Wash.2d 397, 403, 433 P.2d 150 (1967) (citing 2 J.G. Sutherland, Statutes and Statutory Construction § 5110, at 526 (3d ed. 1943)).
The great weight of the legislative history of the 1983 SEPA amendments supports the proposition that the Legislature intended to modify SEPA to preclude case by case review of categorically exempt actions. While Downtown Trafficand Noel required case by case SEPA environmental review of proposals or approvals that were assertedly "major actions," those cases were interpretations of a prior version of SEPA, where the categorical exemptions were mere guidelines, not administrative rules.
Downtown Traffic and Noel are no longer authoritative after the 1983 SEPA amendments and, accordingly, the claim of the concurrence/dissent that Noel, 98 Wash.2d at 380 n. 2, 655 P.2d 245 is inconsistent with the majority approach is to no avail. Compare Concurrence/Dissent at 170. While the concurrence/dissent claims it is not "persuaded by the majority's analysis, based on ambiguous legislative materials and two Court of Appeals opinions....", Concurrence/Dissent at 170, the concurrence/dissent does not address why the 1983 amendments to the statute which postdated both Downtown Traffic and Noel are unpersuasive. We should recall that this statute refers to "[c]ategories of governmental actions" and "types of actions" and further provides that "[a]n action that is categorically exempt under the rules adopted by the department may not be conditioned or denied under this chapter." See, supra, at 161-62.
The mills contend Snohomish involved court approval of an administrative categorical exemption that clearly allowed an individual major action (clear cutting), while Dioxin contends that the court disapproved an administrative exemption but upheld a statutory exemption. Snohomish County v. State, 69 Wash.App. 655, 668-69, 850 P.2d 546 (1993), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994).
In Snohomish, we have exactly the same situation as in Noel v. Cole, 98 Wash.2d 375, 655 P.2d 245 (1982), except the opposite result. Snohomish, 69 Wash.App. at 666, 850 P.2d 546. The issue was: Are class-III forest practices insulated from SEPA review by categorical exemptions in WAC 197-11-800(25)(a)? The Legislature had statutorily exempted class-III forest practices from SEPA without specifying what forest practices were in class III, leaving the definition of forest practices into various classes to Department of Natural Resources (DNR), as in Noel. DNR defined class III by administrative regulation to allow the harvesting of all marketable timber (clear cutting) on a *166 930-acre tract as categorically exempt. Snohomish County argued that this was a major action that could not be validly placed in class III as categorically exempt under Noeland Downtown Traffic. The court held:
DNR['s] ... argument stress[es] ... the Legislature adopted amendments intended to allow DNR to rely on rules classifying forest practices without making a separate determination as to whether SEPA procedures must be followed. We are persuaded by DNR's argument that the legislative amendments following Noel and Downtown Traffic render those cases no longer authoritative on this issue.
Snohomish, 69 Wash.App. at 667, 850 P.2d 546.
SEPA and its amendments present a statutory scheme in which uniform rules are established to identify actions generally exempt from SEPA without the necessity of further review. To require DNR to fully apply SEPA to the process of classifying each forest practice application would render SEPA's categorical exemptions meaningless.
Snohomish, 69 Wash.App. at 668-69, 850 P.2d 546.
We find Snohomish on point, persuasive, and adopt its reasoning.
Concerned Citizens of Hosp. Dist. No. 304 v. Board of Comm'rs of Pub. Hosp. Dist. No. 304, 78 Wash.App. 333, 345 n. 1, 897 P.2d 1267 (1995), review denied, 127 Wash.2d 1024, 904 P.2d 1157 (1995), also questioned Downtown Traffic and Noel:
These cases [Downtown Traffic and Noel] were decided under an earlier law and suggest that categorical exemptions may be denied in some cases on the basis of individual circumstances and critical judicial review. At least one recent case indicates that this approach is no longer appropriate.
Concerned Citizens, 78 Wash.App. at 345 n. 1, 897 P.2d 1267 (citing Snohomish, 69 Wash. App. at 666-69, 850 P.2d 546).
The Legislature's 1995 amendment to SEPA forbidding the conditioning or denial of any action which is categorically exempt under SEPA rules further suggests the Legislature's intention that specific proposals which are categorically exempt may not be blocked by case by case SEPA review:
An action that is categorically exempt under the rules adopted by the department may not be conditioned or denied under this chapter [SEPA].
RCW 43.21C.110(1)(a) (Supp.1995) (amended by Laws of 1995, ch. 347, § 206). Clearly, the amendment confirms the Legislature's intention that case by case review not be used to prevent approval of categorically exempt activities as does the 1996 amendment which enacted the SEPA categorical exemption at issue in this case. Laws of 1996, ch. 322, § 1 (House Bill 2716).
In sum, the extensive legislative history of the 1983 amendments to SEPA, the only prior cases interpreting the 1983 amendments, Snohomish and Concerned Citizens, the 1995 amendments, and the recent statutory adoption of the NPDES permit exemption indicate that the Legislature did not intend RCW 43.21C.110(1)(a) to allow "as applied" challenges to, or case by case review of, categorically exempt activities. The entire purpose of the system of categorical exemptions is to avoid the high transaction costs and delays that would result from case by case review of categorically exempt types of actions that do not have a probable significant adverse environmental impact.
The concurrence/dissent also mistakenly relies upon Dioxin Ito support its conclusion that regulatory categorical exemptions may be subject to as-applied challenges. Concurrence/Dissent at 170. To the contrary, Dioxin I merely recognized the appropriate forum vested with primary jurisdiction to hear Dioxin's claim. There this court affirmed a previous superior court order dismissing a declaratory judgment action commenced by Dioxin holding that where the appellant does not challenge the rule itself but rather the application of the rule primary jurisdiction to consider issuance of specific permits is in the PCHB, not the superior court. Dioxin I, 119 Wash.2d at 771, 837 P.2d 1007, held "appeal to the PCHB is the exclusive means for challenging issuance of permits." As an alternative ground for dismissal, the supreme *167 court also held that the doctrine of primary jurisdiction required such claims be brought initially before the PCHB. That is exactly what Dioxin did here. Dioxin I, 119 Wash.2d at 775, 837 P.2d 1007.
Dioxin I lends no encouragement to the concurrence/dissent's mistaken claim that individual permits may be selectively challenged even though they fit squarely within a regulatory categorical exemption absent a claim that the categorical exemption is itself invalid.
The bottom-line of the concurrence/dissent is that "administrative categorical exemptions can be challenged on an `as applied' or case specific basis." Concurrence/Dissent at 170. For reasons previously stated this conclusion is neither consistent with the 1983 amendments to the statute, the legislative history, nor the post-1983 case law.
Beyond that, the concurrence/dissent attempts to justify its conclusion by claiming it is also based on "common sense," by claiming "this analysis allows Ecology and businesses to rely on administrative categorical exemptions in not requiring threshold determinations of significance or EISs .... [and] results in ... administrative efficiency and cost-effectiveness...." Concurrence/ Dissent at 170-71.
Nothing, however, could be further from the truth. Any regulatory categorical exemption under the analysis of the concurrence/dissent would always be potentially subject to the claim of any individual who characterized the action as "major," notwithstanding that it clearly fell within a valid categorical exemption. Such would mean that neither the government nor permit applicant could rely on the categorical exemption. Both would always face the risk of litigation over whether or not the particular proposal was indeed a "major action" and thus subject to full SEPA review even though the action was admittedly within an exempt category.
Such is neither efficient nor cost-effective which, after all, is the purpose for categorical exemptions in the first place.
By the concurrence/dissent's view, it is not only reasonably possible but a virtual certainty, that construction of even a single family residence, while firmly within a categorical exemption, could nevertheless be challenged as an alleged "major action" notwithstanding the exemption. If such was the legislative intent, the Legislature certainly didn't say so.

CONCLUSION
We hold the 1983 SEPA amendments authorized the Department of Ecology to promulgate administrative rules categorically exempting from SEPA review "types of actions" which do not significantly affect the environment. The courts may still decide if the categorical exemption contained in the rules meets this criteria. The courts may also decide whether a specific proposed action actually fits within the particular categorical exemption. We reverse the superior court as a matter of law, uphold and enforce the regulatory exemption, and award appellants their costs on appeal.
DURHAM, C.J., and DOLLIVER, MADSEN and ALEXANDER, JJ., concur.
JOHNSON, Justice (concurring/dissenting).
The Mills in this case were entitled to the renewal of their NPDES permits because the Pollution Control Hearings Board (PCHB) properly granted partial summary judgment in their favor on the grounds that WAC 197-11-855(1) is reasonably consistent with the State Environmental Policy Act (SEPA) as a matter of law. While this is the same end result as reached by the majority, I write separately because the majority addresses the wrong procedural question, and compounds its mistake by constructing an analysis of SEPA categorical exemptions that ignores the plain language of the statute and is inconsistent with our case law.
To begin, I would affirm the granting of the NPDES permits at issue based on the analysis of the only question which is properly before us procedurally, i.e., did the PCHB err in granting partial summary judgment in favor of the Mills on the SEPA issue? Both the majority and the Superior Court ignore this issue in their rush to discuss the general *168 issue of SEPA categorical exemptions. The majority compounds this mistake by propounding an analysis of "as applied challenges" to SEPA categorical exemptions that fails to account for the plain language of SEPA and is directly contradictory to our unanimous 1992 decision in Dioxin/Organochlorine Ctr. v. Department of Ecology, 119 Wash.2d 761, 837 P.2d 1007 (1992) (Dioxin I).[1]

The PCHB's Summary Judgment Order
The majority goes awry by failing to identify the proper issue before the court. While the majority correctly identifies the standard of review in this case as de novo, it applies that standard to the wrong question. Majority at 161. The majority frames the question before us as review of the Superior Court's interpretation of SEPA. Majority at 161. However, in this case the Superior Court was acting as an appellate court and reviewing the PCHB's partial summary judgment order. Thus, while we may wish to agree or disagree with the Superior Court's analysis, the ultimate issue before us for review is whether the PCHB erred in granting partial summary judgment for the Mills on the grounds WAC 197-11-855(1) is reasonably consistent with SEPA as a matter of law.
In order for Dioxin to prevail on their SEPA claim, Dioxin bears the burden of proof and must overcome the presumption that WAC 197-11-855(1) is reasonably consistent with SEPA as a matter of law. See Weyerhaeuser Co. v. Department of Ecology, 86 Wash.2d 310, 314, 545 P.2d 5 (1976). The PCHB held as a matter of law that the Department of Ecology (Ecology) had complied with SEPA (in not requiring an EIS or determination of significance) because the administrative categorical exemption of NPDES permit renewal at WAC 197-11-855(1) was reasonably consistent with SEPA, and based on the statutory exemption in the federal Clean Water Act. 33 U.S.C. § 1371. The exemption at 33 U.S.C. § 1371(c)(1) exempts NPDES permit renewals from review under the National Environmental Policy Act (NEPA). See Partial Summ. J., PCHB Nos. 91-140, et al. at 19 (May 15, 1992) (hereinafter "Order"); Br. of Resp't Pollution Control Hr'gs Board at 19. Thus, the PCHB accorded WAC 197-11-855(1) the same deference as a SEPA statutory exemption. Order at 19-20.
I agree with the analysis and result reached by the PCHB. In essence, the categorical exemption for NPDES permit renewals exists to prevent redundant and unnecessary review under SEPA because of the overlapping regulatory requirements of RCW 90.48 (water pollution control act) and the federal Clean Water Act. Under RCW 90.48, Ecology is required to ensure NPDES permits do not result in significant environmental impacts. See WAC 173-201A-040(1); WAC 173-201A-070(1). If Ecology fails to so ensure, then it has failed to ensure compliance with state water quality standards and the permit is also illegal under the federal Clean Water Act. 33 U.S.C. § 1311(b)(1)(C). Thus, any NPDES permit potentially triggering SEPA (i.e., a major action having significant environmental impact) would also violate RCW 90.48 and the Clean Water Act. As a matter of law, only illegal permits would be subject to SEPA review. WAC 197-11-855(1) merely exempts from SEPA those *169 permits already in compliance with RCW 90.48 and the Clean Water Act; therefore, as a matter of law those permits are not likely to result in significant environmental impacts.
Dioxin had the opportunity to raise its concerns with the effluent discharge levels authorized in the permits by challenging the content of the NPDES permits before the PCHB. Dioxin elected not to challenge the content of the permits, instead, challenging only the procedure employed by Ecology and the validity of WAC 197-11-855(1).
Requiring redundant SEPA review of NPDES permit renewals is inconsistent with state and federal law. In enacting the Clean Water Act's exemption to NEPA for NPDES permit renewals (33 U.S.C. § 1371(c)(1)), Congress recognized NEPA analysis would be duplicative of the analysis the Environmental Protection Agency (EPA) is required to perform under the Clean Water Act. Congress adopted this exemption in order to prevent unnecessary delays and burdens in implementing the NPDES permit program. This same rationale applies to the NPDES permit renewal by Ecology: duplicative review under SEPA will result in an unnecessary waste of state and private resources, and undesirable delays.
Given Congress' determination that the issuance of NPDES permits is not a major action significantly affecting the environment (a determination Washington's Legislature has since concurred in), and given the numerous environmental factors Ecology must consider in issuing NPDES permits, the PCHB properly concluded WAC 197-11-855(1) is reasonably consistent with SEPA as a matter of law. Contrary to the majority's procedural characterization of our decision in Dioxin I, Dioxin has not challenged WAC 197-11-855(1) as overbroad, or alleged the permits fail to fit within the regulation. Therefore, the Superior Court erred in remanding the permits to the PCHB for a determination of whether the renewal of these permits constitutes a major action significantly affecting the environment.
Neither the majority in its opinion, nor the Superior Court in its opinion, takes the time to address the analysis used by the PCHB to clearly and concisely resolve the issue properly before it. Because I agree with the analysis and result of the PCHB, I would affirm its partial summary judgment order and decline the majority's and Mill's inappropriate invitation to address the issue of categorical exemptions in general under SEPA. The highly specialized context of waste discharge permits at issue here, which are regulated under both RCW 90.48 and the Clean Water Act, does not provide an appropriate or helpful context for deciding the issue of "as applied" challenges to administrative categorical exemptions in SEPA.

"As Applied Challenges" to Administrative Categorical Exemptions in SEPA
Although I do not believe this issue should be decided in the context of this case, I address it in order to express my disagreement with the majority's analysis. The majority holds any particular action, properly falling within an administrative categorical exemption, is exempt from SEPA's requirements and not subject to judicial review even though the particular action at issue may be properly characterized as a "major action significantly affecting the environment." According to the majority, the only issues for which judicial review is available are (1) whether the categorical exemption is overbroad, and (2) whether a particular action properly falls within the categorical exemption. The majority's holding is directly contradictory to the plain language of SEPA, and this court's holdings in Dioxin I and Noel v. Cole, 98 Wash.2d 375, 655 P.2d 245 (1982).
To begin, SEPA requires environmental impact statements (EIS) for "major actions having a probable significant, adverse environmental impact." RCW 43.21C.031(1). Additionally, SEPA gives Ecology the rule-making authority to create categorical exemptions for government actions which are not major actions significantly affecting the quality of the environment. RCW 43.21C.110(1)(a). However, SEPA specifically states:
The types of actions included as categorical exemptions in the rules shall be limited to those types which are not major actions *170 significantly affecting the quality of the environment. The rules shall provide for certain circumstances where actions which potentially are categorically exempt require environmental review.

RCW 43.21C.110(1)(a) (emphasis added).
The majority chooses to ignore this plain language and our unanimous decision in Dioxin I by turning to legislative intent in the form of floor debates and bill reports in order to reach its conclusion that "as applied challenges" are not authorized by SEPA. Majority at 163-65. The majority's use of this legislative intent is unpersuasive. The ambiguousness of this evidence of legislative intent is made apparent by both the Mills' and Dioxin's use of the same materials to reach opposite conclusions about the Legislature's intent in enacting and amending SEPA. Without regard to these materials, the plain language of RCW 43.21C.110(1)(a) states that categorical exemptions are limited to actions which are not "major actions significantly affecting the environment."
The majority and Mills fear this interpretation of categorical exemptions renders such exemptions meaningless. This fear is overstated. First, the majority and Mills fail to recognize the distinction between administrative and statutory categorical exemptions. As stated by a leading commentator:
By virtue of their source, statutory exemptions are limited only by their own terms and, conceivably, the constitutional equal protection requirement. Unlike administrative categorical exemptions, which are subject to the general qualification that they may not include "major actions significantly affecting the quality of the environment," statutory exemptions immunize the specified activities from SEPA requirements regardless of their environmental significance.
Richard L. Settle, Washington State Environmental Policy Act: A Legal & Policy Analysis § 12, at 77-0 (1995) (footnotes omitted). Thus, statutory exemptions immunize the specified actions from SEPA review regardless of their potential environmental consequences.
On the other hand, administrative categorical exemptions can be challenged on an "as applied" or case specific basis. In fact, such review is required. In Dioxin I, this court stated, "[o]ne need not define the entire universe of activities which might constitute major actions before deciding whether a particular activity constitutes a `major action.'" Dioxin I, 119 Wash.2d at 774, 837 P.2d 1007. We went on to hold the exclusive means of appealing these NPDES permits was at the PCHB. Dioxin I, 119 Wash.2d at 774, 837 P.2d 1007. In other words, one may challenge and invalidate a particular action exempt under an administrative categorical exemption, without having to invalidate the entire categorical exemption. This rule is supported by previous statements of this court: "At the least, administratively created exemptions must be construed to apply only when the particular action in question is not a major action significantly affecting the environment." Cole, 98 Wash.2d at 380 n. 2, 655 P.2d 245. I am not persuaded by the majority's analysis, based on ambiguous legislative materials and two Court of Appeals opinions, that this statement is no longer authoritative. In fact, in its resort to and reliance on legislative history, the majority completely ignores our holding in Dioxin I. In Dioxin I, the Dioxin center stayed its challenge to the renewal of these exact permits at the PCHB in order to obtain a declaratory judgment on this SEPA issue. Dioxin I, 119 Wash.2d at 764-66, 837 P.2d 1007. In dismissing its declaratory judgment action and request for injunctive relief we stated, "because Appellants are challenging specific permits, ... jurisdiction for such appeals lies with the PCHB under RCW 43.21B.110(1)(c). Appeal to the PCHB is the exclusive means for challenging issuance of permits." Dioxin I, 119 Wash.2d at 771, 837 P.2d 1007 (footnotes omitted).
My analysis of categorical exemptions, which recognizes the distinction between statutory and administrative exemptions, is in accord with our prior cases and makes common sense. This analysis allows Ecology and businesses to rely on administrative categorical exemptions in not requiring threshold determinations of significance or EISs. Such a procedure results in the administrative *171 efficiency and cost-effectiveness sought by the Legislature. However, when a third party wishes to challenge a specific action, otherwise exempt under an administrative categorical exemption, such a challenge is allowed with the challenger bearing the burden of proving the specific action is a "major action." That burden is not merely one of production, i.e., alleging a given action constitutes a major action; rather, the challenger bears the burden, with its attendant costs and risks, of proving the proposed action constitutes a major action. Such a burden is not insubstantial and the majority's fears regarding the potential number of this type of challenge are overstated. This analysis allows Ecology and businesses to continue to rely on the exemption in most instances.
Under the majority's analysis, the only challenge would be to invalidate the exemption in totality. Thus, if the challenger prevailed, the entire exemption would be lost. But upon what showing is an administrative exemption to be invalidated?upon a showing that among the universe of actions to which it applies there exists one "major action?," two "major actions?" Ecology could not possibly define every administrative categorical exemption to exclude every potential "major action." Nor should this court impose such a burden upon Ecology. Allowing "as applied" challenges is a common sense recognition of the fact that "major actions" will at times creep into administrative categorical exemptions. When they do, properly interested and concerned parties should be allowed to challenge them individually. If the exemption is of such importance that the type of action should never face potential SEPA review, then the Legislature may authorize an absolute exemption statutorily, as it did in this case. The majority's analysis, however, results in an extreme position, unworkable both in theory and practice.

Conclusion
The majority addresses the wrong procedural question, and, in doing so, compounds its mistake by constructing an analysis for all categorical exemptions that ignores the plain language of SEPA and is inconsistent with Dioxin I and this court's previous decisions.
TALMADGE, GUY and SMITH, JJ., concur.
NOTES
[1] 
CHAPTER 322 [House Bill 2716]
WASTE DISCHARGE PERMITSEXEMPTION FROM STATE
ENVIRONMENTAL POLICY ACT PROVISION FOR
EXISTING DISCHARGES
AN ACT Relating to review of renewal of waste discharge permits; and adding a new section to chapter 43.21C RCW.
Be it enacted by the Legislature of the State of Washington:
NEW SECTION. Sec. 1. A new section is added to chapter 43.21C RCW to read as follows:
The issuance, reissuance, or modification of a waste discharge permit that contains conditions no less stringent than federal effluent limitations and state rules is not subject to the requirements of RCW 43.21C.030(2)(c). This exemption applies to existing discharges only and does not apply to new source discharges.
Laws of 1996, ch. 322, § 1.
[2] The Legislature amended SEPA, effective June 6, 1996, by enacting the administrative categorical exemption rule, see WAC 197-11-855, pertinent to the present case, as a statutory provision.

The issuance, reissuance, or modification of a waste discharge permit that contains conditions no less stringent than federal effluent limitations and state rules is not subject to the requirements of RCW 43.21C.030(2)(c). This exemption applies to existing discharges only and does not apply to new source discharges.
Laws of 1996, ch. 322, § 1.
[3] Q: Does the bill eliminate judicial review of categorical exemptions?

A: No. The bill makes it clear that people can rely on a system of categorical exemptions established by the rules. A categorical exemption is a type of action which does not significantly affect the environment. The courts may still decide if a categorical exemption contained in the rules meets this criterion. The courts may also decide whether a specific proposed action actually fits within a particular categorical exemption in the rules.
Final Report at 52 (emphasis added).
[4] 6. Clarifying categorical exemptions. Along with statutory amendments, the rules reaffirm the ability of agencies and members of the public to rely on a system of categorical exemptions.

Final Report at 89.
[1] As a threshold matter, I would dismiss this appeal as moot instead of addressing any of the substantive issues. All of the parties and the majority agree the issue of renewal of the NPDES permits in this case is moot because the NPDES permits at issue have long since expired and, in 1996, the Legislature codified the administratively created categorical exemption for renewal of NPDES permits, thus making such renewals exempt from SEPA by statute. Laws of 1996, ch. 322, § 1 (codifying WAC 197-11-855(1)). While I agree the ultimate issue resolved by the majority is of continuing and substantial public interest, I do not agree that this case provides the proper context for resolving that issue for two reasons. First, this case has been briefed within the highly specific and specialized context of the categorical exemption for the renewal of NPDES permits in WAC 197-11-855(1). As stated in the first section of my dissent, the rationales upon which this exemption is based are highly specific and not easily generalized to any other administratively created categorical exemption. Second, the only question properly before us is the PCHB's partial summary judgment decision. That decision does not purport to address the availability of "as applied challenges" to administrative categorical exemptions under SEPA.