YU, J.
¶ 1 Cynthia Stewart petitioned for judicial review of an administrative decision that she is ineligible for unemployment benefits. Her petition is not subject to the procedural statutes in the Employment Security Act (ESA), Title 50 RCW, which apply only to administrative review. Instead, her petition for judicial review is governed by the procedural statutes in the Administrative Procedure Act (APA), chapter 34.05 RCW. And pursuant to the APA, Stewart did not timely serve her petition on the Employment Security Department (ESD). She therefore failed to invoke the superior court's appellate jurisdiction as prescribed by law, and the court correctly recognized that it was required to dismiss this case. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Stewart suffers from migraine headaches and takes prescription medication to help manage her symptoms. Her former employer fired Stewart after she "came to work impaired due to prescription narcotics for the second time in a six-month period." Admin. R. at 189. Stewart's application for unemployment benefits was initially granted, but her former employer appealed, and an administrative law judge reversed. Stewart petitioned for review by the ESD commissioner, who affirmed that Stewart was ineligible for unemployment benefits.
¶ 3 Stewart then petitioned for judicial review of the commissioner's decision in superior court. She attempted to serve ESD by sending a copy of her petition by mail, but ESD did not receive it until 31 days after the commissioner's decision. Many months after appearing in the superior court proceeding, ESD moved to dismiss, contending that Stewart's service on ESD was untimely pursuant to RCW 34.05.542 and WAC 192-04-210. The trial court granted the motion, concluding *840 that Stewart's service on ESD was completed 1 day too late and that dismissal was mandatory. Stewart sought direct review by this court, which we granted.
ISSUES
A. Did Stewart timely serve her petition for judicial review on ESD?
B. If not, was Stewart's petition subject to mandatory dismissal?
ANALYSIS
¶ 4 Since the 1930s, our legislature has maintained an unemployment compensation program "to prevent [the] spread and to lighten [the] burden" of "economic insecurity due to unemployment." RCW 50.01.010. The ESA provides substantive rules about which unemployed workers are eligible for benefits and the amount of benefits to be paid. It also includes specific procedural statutes for administering Washington's unemployment compensation program.
¶ 5 Among other things, these procedural statutes require multiple levels of administrative review of initial benefits decisions before the parties are permitted to seek judicial review of those decisions in superior court. Briefly, ESD, as the executive branch's designated administrative agency, makes the initial determination about eligibility and benefits. RCW 50.08.010. Then the claimant or employer may seek administrative review by an "appeal tribunal" (an appointed administrative law judge). RCW 50.32.010, .040. If any party disagrees with the decision of the administrative law judge, he or she may seek further administrative review by the ESD commissioner. RCW 50.32.070 -.080. Only after the commissioner issues a decision may the parties seek judicial review. RCW 50.32.090, .120.
¶ 6 In this case, Stewart petitioned for judicial review of the ESD commissioner's decision in superior court, and she mailed a copy of her petition to ESD. We must decide whether this mailing constituted timely service on ESD and, if not, whether the superior court properly dismissed this case.
A. Stewart's petition was not timely served on ESD
¶ 7 As explained below, Stewart timely served her petition for review on ESD if, and only if, the ESA's procedural statutes apply in this context. Thus, the narrow, statutory question presented is whether the ESA's procedural rules apply when a party seeks judicial review of a commissioner's decision about a claimant's eligibility for unemployment benefits. We hold that they do not and, therefore, that Stewart did not timely serve her petition on ESD.
¶ 8 Pursuant to the APA, in order to timely perfect her appeal, Stewart was required to serve her petition on ESD "within thirty days after the agency action." RCW 34.05.542(3). The APA explicitly provides that "[s]ervice of the petition on the agency shall be by delivery ." RCW 34.05.542(4) (emphasis added). "Delivery" for these purposes "shall be deemed to have been made when a copy of the petition for judicial review has been received by the Commissioner's Office."[1] WAC 192-04-210 (emphasis added). It is undisputed that Stewart's petition was not actually received by ESD until 1 day after the 30-day deadline expired. Therefore, in accordance with the APA, service was untimely.
¶ 9 However, Stewart did put a copy of her petition addressed to ESD in the mail within the 30-day time limit, and the ESA's procedural statutes provide that a mailed petition is deemed "received" on the date it is postmarked. RCW 50.32.025(1). Therefore, service would be timely if the ESA's procedural statutes applied in this context. Whether they do is a question of statutory interpretation subject to de novo review. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002).
*841 ¶ 10 According to the plain meaning of the relevant statutes, the ESA does not apply. Moreover, the legislative history shows that the statutes' plain meaning accurately reflects the legislature's intent. We therefore hold that the APA applies and RCW 50.32.025 does not, so Stewart did not timely serve her petition on ESD.
1. The statutes' plain meaning requires us to apply the APA
¶ 11 As Stewart correctly points out, the isolated language of RCW 50.32.025 could suggest that it applies here because that statute provides in general terms that it applies to a "petition from a ... commissioner's decision." But we must consider the meaning of this language "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Campbell & Gwinn, 146 Wash.2d at 11, 43 P.3d 4. In this case, related statutes make it clear that RCW 50.32.025 applies only to petitions for administrative review of a commissioner's decision. Petitions for judicial review are governed solely by the APA.
¶ 12 The ESA specifically provides that "[a]ny decision of the commissioner involving a review of an appeal tribunal decision, in the absence of a petition therefrom as provided in chapter 34.05 RCW, becomes final thirty days after service." RCW 50.32.090 (emphasis added). It further provides that "[j]udicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had only in accordance with the procedural requirements of RCW 34.05.570 ." RCW 50.32.120 (emphasis added). Where these more specific statutes apply, they must be given effect over RCW 50.32.025's general provisions. Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council, 165 Wash.2d 275, 309, 197 P.3d 1153 (2008). And according to the plain meaning of these specific statutes, the APA governs the procedure for judicial review.[2] This is entirely consistent with the legislature's pronouncement that the APA "establishes the exclusive means of judicial review of agency action." RCW 34.05.510.
¶ 13 In this case, Stewart indisputably sought "[j]udicial review of a decision of the commissioner involving the review of an appeals tribunal decision." RCW 50.32.120. Therefore, the specific provisions of RCW 50.32.090 and .120 apply. And according to the plain meaning of those statutes, "[j]udicial review of a final administrative decision of the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act." Tapper v. Emp't Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993).
2. The legislature intended the statutes' plain meaning
¶ 14 We must apply this plain meaning because the legislative history shows that it is exactly what the legislature intended. The legislature intentionally eliminated inconsistent, agency-specific procedural rules for seeking judicial review, first by enacting a single, statutory framework applicable to all agencies (the APA), and then by removing the procedural rules for judicial review from agency-specific statutes (including the ESA). We therefore must apply the plain meaning of the statutes in order to carry out our "fundamental objective ... to ascertain and carry out the Legislature's intent." Campbell & Gwinn , 146 Wash.2d at 9, 43 P.3d 4.
¶ 15 "Before 1959, there was no generalized administrative procedure in Washington. Each state agency's rule-making or adjudicative process was governed by each agency's respective statute." OFFICE OF ATT'Y GEN., ADMINISTRATIVE PROCEDURE ACT DESKBOOK 1-5 (5th ed. 2009). Therefore, the ESA used to contain specific procedures for seeking judicial review of a commissioner's decision, which provided in relevant part as follows:
Such appeal shall be perfected by serving a notice of appeal on the commissioner *842 personally, by personal service, or by mailing a copy thereof to the commissioner, and by filing the notice of appeal together with proof of service thereof with the clerk of the court and by complying with the requirements of this title relating to undertakings on appeal. The service and the filing together with proof of service of the notice of appeal and compliance with the provisions of this title relating to undertakings on appeal, all within thirty days, shall be jurisdictional.
Former RCW 50.32.120 (1971). When these specific procedures were part of the ESA, a commissioner's decision became "final" after 30 days "in the absence of an appeal therefrom as provided by this act." Former RCW 50.32.090 (1945).
¶ 16 However, in 1959, the Washington Legislature began moving toward consistency for all judicial review of agency actions with an early version of the APA, former chapter 34.04 RCW (1959). This early legislation provided general administrative procedural statutes and directed each agency to "adopt rules governing the formal and informal procedures prescribed or authorized by this act." LAWS OF 1959, ch. 234, § 2(1).
¶ 17 But the 1959 legislation did not repeal the specific procedural rules already contained in the ESA. Confusion therefore arose because there were two different sets of potentially applicable rules, and unlike the current statutes, the former statutes provided no guidance about which rules should apply in which circumstances. Agency Note on Proposed Technical Amendments to H.B. 420, at 1, 4, 43d Leg., 1st Ex. Sess. (Wash. 1973) (prepared by ESD). As a result, in 1973, the legislature amended the ESA "by making any decision of the commissioner reviewable according to the provisions of the state APA" and "by deleting the entire section dealing with superior court review of a commissioner's decision and requiring that such review be held only in accordance with the procedural requirements of the state APA." S.B. REP. ON H.B. 420, 43d Leg., 1st Ex. Sess. (Wash. 1973).
¶ 18 The lengthy statute governing judicial review procedures specific to the ESA was replaced with a straightforward directive: "Judicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had only in accordance with the procedural requirements of [former] RCW 34.04.130 [ (1967) ]." LAWS OF 1973, 1st Ex. Sess., ch. 158, § 16. Consistently, the provision governing finality of the commissioner's decision was amended to make it clear that the decision became "final" after 30 days unless a petition was filed "as provided in [former] RCW 34.04.130." Id. § 15. The statutory references have since been amended to reference current APA provisions, but they are substantively unchanged. RCW 50.32.090, .120.
¶ 19 It is true that former RCW 34.04.130 contained both substantive and procedural components, while current RCW 34.05.570 contains only substantive provisions. See dissent at 845-46. However, even if the legislature did intend its updated statutory references to effect a substantive change to RCW 50.32.120, as the dissent contends, it certainly did not intend any such change when it updated RCW 50.32.090, which unambiguously makes final "[a]ny decision of the commissioner involving a review of an appeal tribunal decision, in the absence of a petition therefrom as provided in chapter 34.05 RCW." (Emphasis added.) Chapter 34.05 RCW clearly includes the procedural requirements of RCW 34.05.542. There is thus no basis on which to conclude that the legislature intended to apply the APA's substantive rules to petitions for judicial review of ESD decisions, but nevertheless intended to exempt such petitions from the APA's procedural rules. Contra dissent at 845-46.
¶ 20 From this history, it is apparent that the legislature intended to make judicial review of ESD decisions subject only to the procedural rules of the APA. Therefore, we adhere to the general rule that "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn , 146 Wash.2d at 9-10, 43 P.3d 4. We thus hold that the APA controls, that RCW 50.32.025 does not apply, and that Stewart did not timely serve her petition for judicial review on ESD.
*843 B. The superior court correctly ordered dismissal
¶ 21 In the alternative, Stewart contends that ESD waived or forfeited any argument about untimely service by failing to raise that issue until long after it appeared in the superior court proceeding. However, in accordance with our precedent, Stewart was required to comply strictly with the APA's perfection deadline before the superior court had authority to exercise its appellate jurisdiction pursuant to article IV, section 6 of the Washington Constitution. ESD has no authority to waive untimely service, either explicitly or by implication. We therefore affirm the superior court's order of dismissal.
¶ 22 Adjudicators in administrative agencies like ESD are "inferior courts" created by the legislature. CONST. art. IV, § 12. There is no independent constitutional right to judicial appeal from an inferior court's decisions in civil and administrative cases. Residents Opposed , 165 Wash.2d at 295, 197 P.3d 1153. Rather, the Washington Constitution provides that superior courts "shall have such appellate jurisdiction in cases arising injustices' and other inferior courts in their respective counties as may be prescribed by law ." CONST. art. IV, § 6 (emphasis added).
¶ 23 In accordance with this constitutional structure, " '[w]hen reviewing an administrative decision, the superior court is acting in its limited appellate capacity, and all statutory procedural requirements must be met before the court's appellate jurisdiction is properly invoked.' " Union Bay Pres. Coal. v. Cosmos Dev. & Admin. Corp. , 127 Wash.2d 614, 617, 902 P.2d 1247 (1995) (quoting City of Seattle v. Pub. Emp't Relations Comm'n , 116 Wash.2d 923, 926, 809 P.2d 1377 (1991) ). Thus, the legislature has the authority to enact procedural rules for invoking the superior courts' appellate jurisdiction to review the decisions of inferior courts in civil cases, while the superior courts have no authority to act in such cases unless their appellate jurisdiction is invoked as prescribed by law. E.g., Conom v. Snohomish County , 155 Wash.2d 154, 157, 118 P.3d 344 (2005) ; Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County , 135 Wash.2d 542, 555, 958 P.2d 962 (1998) ; Union Bay , 127 Wash.2d at 617-18, 902 P.2d 1247 ; City of Seattle , 116 Wash.2d at 926-27, 809 P.2d 1377 ; MacVeigh v. Div. of Unemployment Comp. , 19 Wash.2d 383, 385, 142 P.2d 900 (1943). This constitutional limitation cannot be waived by any party, and "[a] court lacking jurisdiction must enter an order of dismissal." Conom , 155 Wash.2d at 157, 118 P.3d 344.
¶ 24 As we have previously held, compliance with statutory time limits for perfecting appeals from inferior courts is necessary "in order to invoke the jurisdiction of the superior court."[3] Fay v. Nw. Airlines, Inc. , 115 Wash.2d 194, 198, 796 P.2d 412 (1990). We have also held that the test for compliance is strict because "[i]t is impossible to substantially comply with a statutory time limit.... It is either complied with or it is not." City of Seattle , 116 Wash.2d at 928-29, 809 P.2d 1377. Here, as discussed above, it was not.
¶ 25 The legislature, with its broad constitutional authority to prescribe rules for judicial review of decisions by inferior courts in civil cases, has had ample opportunity to amend the statutes if our interpretations were incorrect or if the consequences have proved harmful. It has not done so. In fact, the legislature itself has specifically provided that "[a]n agency may not modify time limits relating to rule-making procedures or the time limits for filing a petition for judicial review specified in RCW 34.05.542 ." RCW 34.05.080(1) (emphasis added). We therefore reaffirm that "[b]y failing to serve its petitions *844 within the 30 day time limit," a party "fail[s] to invoke the superior court's appellate jurisdiction."[4] City of Seattle , 116 Wash.2d at 929, 809 P.2d 1377.
¶ 26 In this case, along with the commissioner's decision affirming denial of her benefits, Stewart received instructions for seeking judicial review, including a specific notice that "[t]o properly serve by mail, the copy of your judicial appeal must be received by the Employment Security Department on or before the thirtieth (30th) day of the appeal period." Clerk's Papers at 53. Stewart did not timely serve her petition on ESD in accordance with this notice. And by statute, the commissioner's decision became "final" when Stewart failed to perfect her petition for judicial review within 30 days. RCW 50.32.090. The superior court was therefore without authority to exercise its appellate jurisdiction over this case and properly determined that dismissal was mandatory.[5]
CONCLUSION
¶ 27 The APA is the only source of procedural rules applicable to Stewart's petition for judicial review from the commissioner's decision, and Stewart did not timely serve ESD in accordance with the APA. Therefore, Stewart never invoked the superior court's appellate jurisdiction as prescribed by law, and dismissal was mandatory. We affirm.
WE CONCUR:
Fairhurst, C.J.
Madsen, J.
González, J.
Gordon McCloud, J.

Service on the administrative agency is explicitly differentiated from service on the other parties and the attorney general. Those entities may be served by "mail," and service is "deemed complete upon deposit in the United States mail, as evidenced by the postmark." RCW 34.05.542(4) ; see also RCW 34.05.010(19). However, RCW 34.05.542(4) clearly provides that service on the agency must be by delivery, not by mail. We therefore reject Stewart's argument that WAC 192-04-210 invalidly conflicts with the APA.

This reading does not make RCW 50.32.025's reference to petitions for review of commissioner's decisions superfluous. RCW 50.32.090 and .120 explicitly apply only to petitions for judicial review of a commissioner's decision. Those statutes thus have no effect on RCW 50.32.025's applicability to petitions for further administrative review. E.g., RCW 50.20.160 ; RCW 50.29.070 (providing for administrative reconsideration of a commissioner's decision).

We have clarified that some statutory procedural requirements for judicial review of agency actions do not, in fact, limit the superior courts' appellate jurisdiction. For instance, we held that a statute limiting review of Washington State Gambling Commission decisions to the Thurston County Superior Court merely "establishes the proper venue for judicial review" because, once the jurisdiction of the superior courts is invoked, every superior court has the power to hear and decide the case (that is, every superior court has subject-matter jurisdiction). ZDI Gaming, Inc. v. Wash. State Gambling Comm'n , 173 Wash.2d 608, 619, 268 P.3d 929 (2012). In this case, however, the appellate jurisdiction of the superior courts was not invoked because Stewart never timely perfected her petition for judicial review.

We recognize that some federal cases have declined to treat certain procedural " 'claim-processing' " statutes "as having 'jurisdictional' consequences." Henderson v. Shinseki , 562 U.S. 428, 435, 431, 131 S.Ct. 1197, 179 L.Ed. 2d 159 (2011). However, the relevant question is not whether the court should attach jurisdictional consequences to a procedural statute. The question is whether the legislature intended to do so, because the legislature "is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule." Id. at 435, 131 S.Ct. 1197. This is a question of statutory interpretation, and in the context of the APA's 30-day perfection deadline, we have already answered it. The legislature appears to agree with our answer, and Stewart does not otherwise show that our precedent is incorrect and harmful. We therefore decline to reconsider it. State v. Otton , 185 Wash.2d 673, 678, 374 P.3d 1108 (2016).

Stewart briefly argues that mandatory dismissal violates her federal constitutional right to procedural due process. See Mathews v. Eldridge , 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976). However, Stewart's argument on this topic is limited in substance to her contention that ESD's statutory interpretation is unfair. That is not the relevant inquiry. See id. at 335, 96 S.Ct. 893. We therefore decline to hold that Stewart has shown any federal procedural due process violation.