# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CRAIG R. JOLLEY, DMD, PLLC, | No. 59466-8-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE OFFICE OF INSURANCE COMMISSIONER (Mike Kreidler, Commissioner), | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—The Office of the Insurance Commissioner for Washington State (Insurance Commissioner) regulates insurers, including imposing fines for the unauthorized provision of insurance. But health care providers who operate "direct practices" are not considered insurers. The insurance code defines a direct practice in relevant part as a "health care provider who furnishes primary care services through a direct agreement." RCW 48.150.010(4)(a)(i). A provider may not operate a direct practice unless they submit an annual statement to the Insurance Commissioner.

Dr. Craig Jolley is a dentist and business owner who offered a membership club, allowing uninsured patients to pay a monthly fee in exchange for certain services including dental cleanings and exams. After an investigation, the Insurance Commissioner determined that Jolley's membership club met the definition of insurance and issued a cease and desist order for the

unauthorized provision of insurance. At no point during the investigation did Jolley claim to be operating a direct practice. The cease and desist order did not mention the direct practice provision.

Jolley sought administrative review of the cease and desist order arguing that his membership club was a direct practice that could not be considered insurance. He also claimed that the Insurance Commissioner had unlawfully adopted a rule excluding dentists from operating direct practices, but the administrative law judge (ALJ) declined to consider Jolley's rule challenge. The ALJ's order explained that the rule challenge could be raised directly in Thurston County Superior Court without a need to exhaust administrative remedies. The administrative review of the cease and desist order continued because other issues remained.

While the administrative adjudication was pending, Jolley filed a petition in Thurston County Superior Court seeking review of an alleged rule that excluded dentists from the direct practice program. The rule challenge was based on the Insurance Commissioner's statements in legislative reports, public webpages, and a letter to the Washington State Dental Association. Jolley argued that these statements constituted "rules" that were adopted without following the rule making procedures of the Administrative Procedure Act (APA), chapter 34.05 RCW. Jolley's petition also sought an injunction prohibiting enforcement of the cease and desist order, characterizing it as unlawful enforcement of the alleged rule. But Jolley did not ask that the order be invalidated.

The Insurance Commissioner moved to dismiss Jolley's petition because Jolley failed to exhaust his administrative remedies before filing. The trial court granted the Insurance Commissioner's motion and dismissed the petition after concluding that the APA's exhaustion requirement applied to all of Jolley's claims.

Jolley appeals, arguing that exhaustion was not required for his rule challenge. Jolley's assignments of error and briefing do not challenge the dismissal of the portion of his petition challenging the alleged enforcement of the rule or seeking injunctive relief from the cease and desist order.

The Insurance Commissioner raises two threshold arguments: that Jolley lacks standing and that the appeal is moot. We disagree. Jolley has standing to raise the alleged procedural harm of being denied notice and an opportunity to comment on an agency's alleged rule before adoption. And the appeal is not moot because substantial issues remain for the trial court to consider—first and foremost, whether the alleged statements qualify as a "rule" under the APA.

Turning to the merits, Jolley argues that the trial court erred when it dismissed his rule challenge based on his failure to exhaust his administrative remedies. The Insurance Commissioner responds that the petition is not a rule challenge but an attempt to obtain collateral review of the cease and desist order, so exhaustion was required. We agree with Jolley because his petition on its face raised a rule challenge under RCW 34.05.570(2)(b)(i), and the APA does not require exhaustion of administrative remedies for such a claim. Jolley does not argue on appeal that the trial court erred when it dismissed his other claims, so we need not consider them. We remand for the trial court to conduct a review of the alleged rule where the first step is to determine whether the agency statements that Jolley takes issue with were in fact a "rule" within the meaning of the APA. *See, e.g., Nw. Pulp & Paper Ass'n v. Dep't of Ecology*, 200 Wn.2d 666, 673-76, 520 P.3d 985 (2022); *Simpson Tacoma Kraft Co. v. Dep't of Ecology*, 119 Wn.2d 640, 646-49, 835 P.2d 1030 (1992).

FACTS

I. BACKGROUND

The Insurance Commissioner is head of a state agency responsible for enforcing Washington's insurance code, including investigating the unauthorized provision of insurance. RCW 48.02.060(3)(a)-(b). If someone is acting as an insurer without authorization, the Insurance Commissioner may issue a cease and desist order and impose civil penalties. RCW 48.15.023(5)(a)(i)-(ii).

Direct practices are an alternative payment model for primary care services "in which patients enter into a direct relationship with medical practitioners and pay a fixed amount directly to the health care provider." RCW 48.150.005. The Insurance Commissioner is charged with collecting required annual statements from direct practices, which are not considered insurers under the code. RCW 48.150.060, .100(1). Specifically, a direct practice provider may not engage in a direct practice under the statute unless they submit an annual statement to the Insurance Commissioner containing certain information. RCW 48.150.100(2). The statute gives the Insurance Commissioner the authority to develop the form and content of the annual statement. RCW 48.150.100(1).

Dr. Craig Jolley is a dentist who owns his practice, Craig R. Jolley, DMD, PLLC (Jolley). Jolley offered a "membership club" to uninsured patients, allowing them to pay a monthly fee in exchange for certain services including dental cleanings and exams. Clerk's Papers (CP) at 518. The club included three tiers with different monthly fees and varying levels of service. While operating the membership club, Jolley never submitted annual statements with the Insurance Commissioner, a requirement for operating a direct practice. RCW 48.150.100(2).

II. ADMINISTRATIVE PROCEEDINGS

A.    Investigation and Cease and Desist Order

After an anonymous complaint, the Insurance Commissioner warned Jolley that his membership club "may constitute an unauthorized insurance product" and that it could initiate an investigation if he continued to offer the membership club. CP at 511. Jolley responded that the membership club was "very similar to the direct patient-provider model," but he did not directly assert that his membership club was a direct practice. CP at 518. When Jolley did not cease offering the membership club, the Insurance Commissioner opened a formal investigation. During the investigation, Jolley disputed that his club constituted an insurance product but did not claim to be operating a direct practice.

After completing its investigation, the Insurance Commissioner determined that Jolley's membership club met the definition of insurance and issued a cease and desist order. The Insurance Commissioner also imposed a $20,000 fine for Jolley's unauthorized provision of insurance and ordered him to pay several years of unpaid premium taxes, interest, and tax penalties. The cease and desist order did not include a determination of whether Jolley's practice fell under the direct practice exemption.

B.    Adjudicative Proceeding

Jolley sought reversal of the cease and desist order by initiating an adjudicative proceeding. He disputed that the membership club constituted an unauthorized insurance product and, as part of his defense, Jolley argued that his membership club was a direct practice.

A prehearing conference order identified the issues for review, including one issue challenging an alleged promulgation of a rule:

> Whether the Office of the Insurance Commissioner promulgated rules relating to RCW 48.150 (either informally or by adjudication) (i) without the authority to do so; (ii) without following the Administrative Procedures Act, (iii) without consideration of RCW 18.120, which provides that regulation of health professions is appropriate only when the public interest requires protection, and (iv) in derogation of the authority of the dental quality assurance commission.

CP at 651. The Insurance Commissioner objected to consideration of this issue, arguing that the alleged rule was irrelevant to the cease and desist order, and that Jolley could instead file a petition for declaratory judgment in superior court, as permitted under the APA. *See* RCW 34.05.570(2)(b)(i). Specifically, the Insurance Commissioner argued, "[b]ecause [Jolley's] proposed issue is regarding the [Insurance Commissioner]'s promulgation of rules, the correct forum is the superior court," and "[t]he validity of agency rules is reviewed in superior court, and not by this administrative tribunal." CP at 663, 694.

An ALJ agreed and struck the rule challenge from the proceeding, concluding that it did not have authority to consider the rule challenge and that the proper forum was superior court. The ALJ's order also noted that Jolley did not have to exhaust administrative remedies in order to challenge the validity of a rule: "Exhaustion is clearly not required under either RCW 34.05.570(2)(b)(i) or by case law." CP at 701-02. The administrative adjudication continued because other issues remained.

### III. THURSTON COUNTY PETITION[1]

While the adjudicative proceeding was still pending, Jolley filed a petition in Thurston County Superior Court raising claims of unlawful rule making under RCW 34.05.570(2), challenging the unlawful enforcement of the alleged rule under RCW 34.05.570(4), and seeking

---

[1] We refer to Jolley's amended petition as the "petition" throughout for ease of reference.

relief under the Uniform Declaratory Judgments Act, chapter 7.24 RCW. The petition did not seek review of an agency order under RCW 34.05.570(3).

A.      APA Rule Challenge

Jolley's petition alleged that the Insurance Commissioner had adopted an "unpromulgated rule . . . that only physicians—and no other health care providers such as dentists—may operate a direct patient-provider practice." CP at 394. Jolley sought a declaratory judgment invalidating the alleged rule under RCW 34.05.570(2) because the rule was adopted without following the APA's rule making procedures, exceeded the Insurance Commissioner's statutory authority, and was arbitrary and capricious. RCW 34.05.570(2)(a) ("A rule may be reviewed by petition for declaratory judgment filed pursuant to this subsection.").[2]

According to Jolley, the unlawful rule making occurred when the Insurance Commissioner submitted a report to the legislature describing a "direct practice" as "'a model of care where physicians charge a pre-determined fixed monthly fee to patients for all primary care services provided in their office regardless of the number of visits,'" and made similar statements in subsequent reports. CP at 399 (quoting record). Jolley also claimed that a portion of the Office of the Insurance Commissioner's website qualified as an unlawful rule because it stated that dentists generally could not qualify as direct providers. Further, Jolley claimed that the Insurance Commissioner engaged in illegal rule making by sending a letter to the Washington State Dental Association stating that only medical practices could qualify as direct practices.

---

[2] We note that this subsection of RCW 34.05.570 refers to "declaratory judgment," but this APA declaratory judgment is different from declaratory judgment under the Uniform Declaratory Judgments Act, which is not cross-referenced in RCW 34.05.570(2).

B.      Other Claims

Jolley's petition raised two additional claims: he sought review of the alleged rule under the Uniform Declaratory Judgments Act and he sought review of other agency action under RCW 34.05.570(4) based on the alleged enforcement of the rule. In his prayer for relief, he asked the court to enjoin the Insurance Commissioner from enforcing the cease and desist order against him.

The RCW 34.05.570(4) "other agency action" claim specifically challenged an alleged pattern of "arbitrarily and capriciously conducting investigations, identifying purported violations, issuing cease and desist orders, and levying fines against health care providers, including dental practices such [as] Jolley." CP at 417. To support this claim, Jolley described the Insurance Commissioner's investigation, cease and desist order, and administrative adjudication in detail. He alleged that

> when health care providers such as Jolley—relying on the [Insurance Commissioner]'s ruling that only physicians can qualify as direct practice providers—do not comply with the [Insurance Commissioner]'s fabricated registration requirement or submit annual statements, the [Insurance Commissioner] then investigates and ultimately issues cease and desist orders and levies fines against them.

CP at 415.

However, Jolley's petition did not directly seek judicial review of the cease and desist order against him or of any adjudicative orders entered in the pending administrative appeal from the cease and desist order under RCW 34.05.570(3). He did not ask the court to invalidate the cease and desist order. Instead, he asked that the court enjoin the enforcement of the order.

C.        Motion to Dismiss

The Insurance Commissioner moved to dismiss the petition, arguing that the petition was barred under RCW 34.05.534(1) because Jolley failed to exhaust his administrative remedies given the ongoing challenge to his cease and desist order.

The Insurance Commissioner primarily argued that Jolley's petition should be treated not as a rule challenge, but as a collateral challenge to the cease and desist order. This argument was based on Jolley's request for injunctive relief from the cease and desist order, as opposed to "purely declaratory relief." CP at 740. Additionally, the Insurance Commissioner asserted that even treating the petition as a rule challenge under RCW 34.05.570(2)(b)(i), "[e]xhaustion of administrative remedies, where available, is still required." CP at 739. The Insurance Commissioner maintained that the administrative proceeding offered an adequate remedy for Jolley's alleged harm.

At a hearing on the motion to dismiss, the Insurance Commissioner never asserted that it had in fact subjected its statements about application of the direct practice statute to the rule making process. The Insurance Commissioner also did not address the sentence in RCW 34.05.570(2)(b)(i) stating that a rule challenge may be brought in superior court whether or not the petitioner has first asked the agency to decide the validity of the rule in question.

The trial court granted the Insurance Commissioner's motion and dismissed Jolley's petition based on his failure to exhaust administrative remedies. It concluded:

> The action that is at issue here is reviewable under the APA. The Court concludes that exhaustion of administrative remedies is required and that the remedies sought in this case are remedies that are available under the APA. Therefore, administrative remedies must be exhausted for this Court to have jurisdiction. This applies to all of the claims.

CP at 807.

Jolley appeals the dismissal of his rule challenge raised under RCW 34.05.570(2). His assignments of error and arguments on appeal do not challenge the dismissal of his other claims, including the dismissal of his claim under the Uniform Declaratory Judgments Act and the request to enjoin enforcement of the cease and desist order.

ANALYSIS

In this appeal, Jolley seeks review of the trial court's dismissal of the rule challenge claim raised in his petition under RCW 34.05.570(2). He argues that the trial court erroneously dismissed that claim based on its view that he was required to exhaust administrative remedies prior to filing a petition seeking declaratory relief from an alleged rule.

Although Jolley's petition also contained a claim for review of other agency action under RCW 34.05.570(4) challenging the Insurance Commissioner's enforcement, Jolley has not sought review of the trial court's dismissal of that claim. Jolley has also abandoned the portion of his rule challenge resting on the Uniform Declaratory Judgments Act, explicitly acknowledging that statute does not support his claims. To the extent his petition sought injunctive relief from the order, he has abandoned his argument that he is entitled to that relief.

The Insurance Commissioner argues that Jolley's petition was not a rule challenge but a collateral attack on the Insurance Commissioner's cease and desist order against him. But based on a careful reading of the claims raised below and the arguments raised in this appeal, we disagree. This is a narrow appeal seeking remand for the trial court to consider Jolley's claim of unlawful rule making under RCW 34.05.570(2) and his attempt to obtain declaratory relief from the alleged rule under the APA. Jolley's challenge to the cease and desist order itself proceeded to an

adjudicative proceeding, which is subject to separate judicial review, so the parties are not deprived of an opportunity to address those issues.

## I. LEGISLATIVE BACKGROUND

A.      Direct Patient-Provider Primary Health Care Act

The Washington Legislature created the direct practices program when it adopted the "Direct Patient-Provider Primary Health Care Act," chapter 48.150 RCW, an act intended to improve access to primary care. RCW 48.150.005. Direct practices are an alternative payment model for primary care services "in which patients enter into a direct relationship with medical practitioners and pay a fixed amount directly to the health care provider." *Id.*

The act defines a direct practice in relevant part as a "health care provider who furnishes primary care services through a direct agreement." RCW 48.150.010(4)(a)(i). The code permits health care providers to operate "direct practices" if they meet certain criteria and submit annual statements to the Insurance Commissioner. RCW 48.150.010(4)(a)-(d), .100(2). Direct practices that comply with all the statutory requirements, including the annual statement, are not insurers. RCW 48.150.060.

B.      Administrative Procedure Act

The APA is the "exclusive means of judicial review of agency action" with limited exceptions not applicable here. RCW 34.05.510. This includes review of agency rules, final orders in adjudicative proceedings, and other agency actions. RCW 34.05.010(3). Relevant to this appeal, a superior court may declare an agency's rule invalid if "the rule was adopted without compliance with statutory rule-making procedures." RCW 34.05.570(2)(c). The APA's rule making

procedures require agencies to provide the public with both notice and an opportunity to comment on any proposed rule before the rule is adopted. *See* RCW 34.05.320, .325.

Petitioners may seek review of an agency rule in two ways: either by filing a petition for declaratory judgment directly in the superior court, or by raising the rule challenge in the context of another review proceeding, such as a challenge to an adjudicative order. RCW 34.05.570(2)(a). With respect to the former, RCW 34.05.570(2)(b)(i) provides,

> The validity of any rule may be determined upon petition for a declaratory judgment addressed to the superior court of Thurston county, when it appears that the rule, or its threatened application, interferes with or impairs or immediately threatens to interfere with or impair the legal rights or privileges of the petitioner. The declaratory judgment order may be entered *whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question*.

(emphasis added). Thus, a petitioner seeking declaratory relief from agency rules under that provision of the APA is not subject to the APA's general requirement that a petitioner exhaust administrative remedies before petitioning the superior court for review of an agency action. RCW 34.05.534(2).

An agency's own characterization is not dispositive of whether a particular action constitutes a "rule" within the meaning of the APA. *See Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 673-76; *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 647-49. Rather, we look to the statutory definition of a "rule" under the APA. *Nw. Pulp & Paper Ass'n,* 200 Wn.2d at 672. As a threshold matter, a rule must be an "'agency order, directive, or regulation of general applicability,'" whereas "a document that aids and assists in compliance with the law or interprets a statutory phrase without adding any requirements does not constitute a rule." *Id.* (quoting RCW 34.05.010(16)); *id.* at 676.

The Washington Supreme Court has articulated a three-part analysis for whether an agency's statement meets the threshold criteria to be considered a rule. *City of Tacoma v. Dep't of*

*Ecology*, 3 Wn.3d 633, 643, 555 P.3d 390 (2024). To determine whether an agency's action can qualify as a rule, courts should ask "whether the agency action (1) allows staff to exercise discretion, (2) provides for case-by-case analysis of variables rather than uniform application of a standard, and (3) is not binding on those regulated." *Id. ;see also Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 673-76.

For example, in *Northwest Pulp & Paper Ass'n*, the petitioner argued that an amendment to an agency permit writer's manual was an invalid agency rule adopted without formal rule making procedures. 200 Wn.2d at 670-71. But the Washington Supreme Court held that the new section of the manual was not a rule because it allowed permit writers to exercise discretion and make individual permitting determinations on a case-by-case basis. *Id.* at 676. Because the challenged agency action was not a directive of general applicability, the agency did not invalidly adopt a rule when it amended the manual without formal rule making procedures. *Id.*

## II. STANDING

The Insurance Commissioner argues that Jolley lacks standing under the APA to challenge the alleged rule excluding dentists from the direct provider program. We disagree.

A petitioner seeking review of an agency rule under the APA bears the burden of showing that they have standing. *Benton County Water Conservancy Bd. v. Dep't of Ecology*, 3 Wn.3d 59, 67, 546 P.3d 394 (2024).

When challenging a rule under RCW 34.05.570(2)(b)(i), the petitioner must show "that the rule, or its threatened application, interferes with or impairs or immediately threatens to interfere with or impair the legal rights or privileges of the petitioner." *See also Sarepta Therapeutics, Inc. v. Health Care Auth.*, 19 Wn. App. 2d 538, 549 n.5, 497 P.3d 454 (2021).

In addition, RCW 34.05.530 confers APA standing on those who have been "aggrieved or adversely affected by the agency action." This requires showing all three of the following conditions:

> (1) The agency action has prejudiced or is likely to prejudice that person;
> (2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and
> (3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

*Id.* The first and third criteria, together, are "considered 'injury-in-fact' requirements" and the second criteria is known as "the 'zone of interest' test." *Benton County Water Conservancy Bd.*, 3 Wn.3d at 67.

A.      Impairment of Legal Rights or Privileges

Jolley claims that he was deprived of his legal right to notice and an opportunity to comment on the alleged rule before its adoption. We conclude that this alleged procedural injury is sufficient to meet RCW 34.05.570(2)(b)(i)'s requirement that "the rule, or its threatened application, interferes with or impairs or immediately threatens to interfere with or impair the legal rights or privileges of the petitioner."

The APA's rule making procedures certainly constitute "legal rights or privileges" within the meaning of RCW 34.05.570(2)(b)(i). Under the APA, the public is entitled to both notice and an opportunity to comment on proposed rules before those rules are adopted by an agency. *See* RCW 34.05.320, .325. "These procedures allow members of the public to meaningfully participate in the development of agency policies that affect them." *Nw. Pulp & Paper Ass'n,* 200 Wn.2d at 672. The Insurance Commissioner has never claimed to have followed those procedures, instead

arguing that the statements at issue here are not rules at all, so rule making procedures were not required.

It is beyond the scope of this appeal to determine whether the statements qualify as a rule—for standing purposes, we assume without deciding that the alleged rule actually constitutes a "rule" under RCW 34.05.010(16). And Jolley has shown that the Insurance Commissioner's adoption of the alleged rule (if it is a rule), without the APA's rule making procedures, impaired his procedural rights and privileges to give input on the rule in a public process. Jolley has satisfied the injury requirement contained in RCW 34.05.570(2)(b)(i).

B.     Injury-in-Fact

Our injury-in-fact analysis has two components: prejudice and redressability. *Benton County Water Conservancy Bd.*, 3 Wn.3d at 67. "To prove prejudice, the party seeking review must demonstrate how the agency action caused specific and perceptible injury to a legally protected interest." *Id.* at 68. To prove redressability, the petitioner must show that a judgment in their favor "would substantially eliminate or redress the prejudice." RCW 34.05.530(3). Redressability must be "'likely, as opposed to merely speculative.'" *Benton County Water Conservancy Bd.*, 3 Wn.3d at 76 (internal quotation marks omitted) (quoting *KS Tacoma Holdings, LLC v. Shorelines Hr'gs Bd.*, 166 Wn. App. 117, 129, 272 P.3d 876 (2012)).

Here, Jolley argues that his petition shows that he suffered a procedural injury due to the Insurance Commissioner's alleged implementation of a rule without adhering to the APA's notice and comment requirement. The Washington Supreme Court has "recognized that 'procedural rights are special: [t]he person who has been accorded a procedural right to protect [their] concrete interests can assert that right without meeting all the normal standards for redressability and

immediacy.'" *Id.*at 75 (alterations in original) (internal quotation marks omitted) (quoting *Allan v. Univ. of Wash.*, 140 Wn.2d 323, 330, 997 P.2d 360 (2000)). However, individuals asserting procedural injury still must show a concrete interest protected by the specific rule making process being challenged in order to meet the injury-in-fact requirement for APA standing. *Id.*

Jolley maintains that as a dentist providing preventative health care services, he had a concrete interest in the statutorily required notice and comment period before the Insurance Commissioner adopted rules impacting the scope of the direct provider program. For standing purposes, assuming without deciding that the Insurance Commissioner *did* adopt the alleged rule, Jolley has alleged sufficient facts to show he has such an interest. He claimed that the rule was adopted without proper rule making procedures, provided examples of the Insurance Commissioner's alleged adoption and enforcement of the rule against dentists, showed that he was a dentist operating a business in Washington, and he was among those who would have been entitled to participate in rule making had it occurred. Other than whether the Insurance Commissioner's actions constituted adoption of a rule, none of these underlying facts is contested. Moreover, the claimed procedural injury would be redressed by an opportunity to participate in a public, transparent, rule making process on a proposed rule that would directly impact him: a rule stating whether dentists can ever be direct practice providers.

The Insurance Commissioner argues that Jolley cannot demonstrate a concrete injury because he did not meet the other requirements of operating a direct practice, so the alleged rule was not the reason Jolley was ultimately fined and ordered to cease and desist operating his membership club. It is true that the Insurance Commissioner's cease and desist order does not appear to be traceable to the alleged rule—as Jolley noted in his petition, those agency actions

were justified by his noncompliance with the direct practice requirement to file annual statements. For the limited purpose of Jolley's standing to bring a procedural rule challenge, this is irrelevant because as a medical professional, he certainly had a stake in participating in the rule making process for development of any rules governing alternative payment programs for medical treatment.

We hold that the deprivation of his notice and comment rights prior to the alleged rule adoption, if true, was a sufficient injury-in-fact to support Jolley's claim alleging the Insurance Commissioner adopted a rule without engaging in the required rule making process under the APA.[3]

C.      Zone of Interest

Having determined that Jolley has alleged a sufficient procedural injury to meet the first prong of the APA standing test, we turn to the second prong and ask whether Jolley's interest in notice and comment were "among those that the agency was required to consider" when adopting the alleged rule. RCW 34.05.530(2).

The zone of interest test "serves as an additional filter limiting the group [that] can obtain judicial review of an agency decision," but it "'is not meant to be especially demanding.'" *Seattle Bldg. & Const. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 797, 920 P.2d 581 (1996) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 93 L. Ed. 2d 757 (1987)). We ask "'whether the Legislature intended the agency to protect the party's

---

[3] To the extent Jolley also claimed that the alleged rule was arbitrary and capricious or adopted in excess of the Insurance Commissioner's authority, we need not reach these issues. The trial court can address these questions on remand if it first determines that the alleged rule is actually a rule.

17

interests when taking the action at issue.'" *Id.* (quoting *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 739-40, 887 P.2d 891 (1995)).

Here, Jolley is within the zone of interest meant to be protected by the APA's rule making procedures. "The purpose of such rule-making procedures is to ensure that members of the public can participate meaningfully in the development of agency policies [that] affect them. In enacting the 1988 APA, the Legislature intended to provide greater public access to administrative decisionmaking." *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 649 (citations omitted). As a member of the public and a medical professional, Jolley has met his burden to show he is within the zone of interest for the notice and comment requirements at issue here where the alleged rule impacts members of his profession. Thus, we conclude that Jolley has shown he has standing for his procedural rule making challenge.

### III. MOOTNESS

The Insurance Commissioner argues that this appeal is moot. We disagree.

"A case is moot when it involves only abstract propositions or questions, the substantial issues in the trial court no longer exist, or a court can no longer provide effective relief." *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 86, 546 P.3d 385 (2024). Jolley has raised a procedural rule challenge tied to his statutory right to notice and comment under the APA, a right that is afforded to all. *See* RCW 34.05.320, .325. But this right only attaches if the alleged statements can be considered a "rule" in the first instance, within the meaning of the APA. *See* RCW 34.05.010(16); *City of Tacoma*, 3 Wn.3d at 643; *Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 672-73. Whether the statements are rules is a concrete question, not an abstract one. That

determination constitutes a substantial issue that remains for the trial court to decide, and the superior court can provide relief if Jolley succeeds, so this appeal is not moot.

The Insurance Commissioner presents no argument as to why the *procedural* rule challenge is moot, instead asserting without analysis that the procedural challenge may be raised in the context of Jolley's challenge to the Insurance Commissioner's cease and desist order.[4] It is true that the superior court may, in some circumstances, review the validity of an agency rule in an appeal from an administrative adjudication. RCW 34.05.570(3)(a). But this only applies to a "rule on which the order is based," and here, the cease and desist order was not *based on* the alleged rule excluding dentists from operating direct practices. *Id.*

To the contrary, the record shows that the alleged rule was irrelevant to the Insurance Commissioner's cease and desist order against Jolley given his failure to meet prerequisites for qualifying as a direct practice provider, including the annual statement requirement. RCW 48.150.100(2). Jolley admitted in his petition that he did not submit annual statements to the Insurance Commissioner—a requirement to benefit from the direct practice program. *Id.* And the Insurance Commissioner agrees that regardless of any de facto rule excluding dentists from the direct practice program, Jolley's failure to submit annual statements would still prevent him from qualifying as a direct practice. We disagree with the Insurance Commissioner that the progress in Jolley's other case renders this one moot.

---

[4] The Insurance Commissioner asks that we take judicial notice of Jolley's petition for review of the administrative adjudication in King County, including that he appealed the dismissal of the rule challenge. We decline to take judicial notice of the contents of the King County petition because it is not needed to fairly resolve the issues in this appeal and would not change the outcome of this case were we to consider it. RAP 9.11(a)(1)-(2). However, Jolley does not dispute that he appealed the administrative adjudication in King County after the final order was entered.

We should hold that the procedural challenge to the Insurance Commissioner's alleged rule is not moot because substantial issues remain for the trial court to consider—first and foremost, whether the alleged statements can be considered a "rule" in the first instance, within the meaning of the APA. *See* RCW 34.05.010(16); *City of Tacoma*, 3 Wn.3d at 643; *Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 672-76. Therefore, we proceed to the merits of Jolley's challenge to the trial court's dismissal of his petition.

## IV. EXHAUSTION

Jolley argues that the trial court erred by dismissing his rule challenge based on its erroneous view that it lacked authority to consider his petition because he failed to exhaust administrative remedies. The Insurance Commissioner responds that Jolley's petition was not a rule challenge but a collateral attack on the cease and desist order, so the superior court correctly determined that exhaustion was required.

We agree with Jolley that his petition involved a challenge to an alleged rule and the Insurance Commissioner's alleged general enforcement of the rule. We conclude that the trial court had the authority to consider Jolley's rule challenge even though he simultaneously brought an adjudicative proceeding challenging the agency's cease and desist order. Exhaustion was not required for the rule challenge, so we reverse the trial court's dismissal of that portion of the petition.

A.      Judicial Estoppel

As a threshold matter, Jolley argues that the Insurance Commissioner should be judicially estopped from arguing in this appeal that exhaustion was required. We disagree.

20

The equitable doctrine of judicial estoppel "'precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).

Jolley's claim of estoppel is based on the Insurance Commissioner's arguments to the administrative tribunal, where the Insurance Commissioner argued, "[b]ecause [Jolley's] proposed issue is regarding the [Insurance Commissioner]'s promulgation of rules, the correct forum is the superior court" and, "[t]he validity of agency rules is reviewed in superior court, and not by this administrative tribunal." CP at 663, 694.

The Insurance Commissioner agrees in its briefing to this court that a rule challenge can be raised in superior court without the need to exhaust administrative remedies. Specifically, the Insurance Commissioner maintains that

> (1) only the superior court, not the administrative hearing officer, has the authority to rule on the validity of an alleged "rule"; (2) where a party is *solely* challenging the validity of a rule under the APA, exhaustion of administrative remedies is not required; and (3) where a party is challenging an agency order, as Dr. Jolley does here, exhaustion is required before the courts can properly exercise their appellate jurisdiction.

Resp't's Opening Br. at 40. Thus, the Insurance Commissioner argues that what Jolley is really doing in this action is challenging the agency's cease and desist order, and that position is not clearly inconsistent with its earlier arguments.

We reject Jolley's judicial estoppel arguments and proceed to the merits.

B.    Exhaustion

As another initial matter, we note that the parties and the court incorrectly treated exhaustion as a matter of subject matter jurisdiction. "Subject matter jurisdiction refers to a court's ability to entertain a type of case." *In re Marriage of Buecking*, 179 Wn.2d 438, 448, 316 P.3d 999 (2013). To the extent there is any dispute that the superior court had subject matter jurisdiction to consider a rule challenge under the APA, it clearly did.

The Washington Constitution provides that our superior courts "have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6. The legislature cannot restrict the courts' original jurisdiction without running afoul of article IV section 6. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 616-18, 268 P.3d 929 (2012). Superior courts also have "such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties *as may be prescribed by law*." WASH. CONST. art. IV, § 6 (emphasis added). Thus, the legislature may limit the courts' authority to exercise appellate jurisdiction through procedural prerequisites, such as those in the APA. *Stewart v. Emp. Sec. Dep't*, 191 Wn.2d 42, 52-53, 419 P.3d 838 (2018). The exhaustion requirement, where it applies, is one such prerequisite. RCW 34.05.534; *see also Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 648, 310 P.3d 804 (2013) (common law exhaustion requirement is not jurisdictional). Therefore, this dispute concerns whether Jolley met the statutory prerequisites to properly invoke the court's *authority* to consider the petition under the APA, not whether it had *subject matter jurisdiction*.

RCW 34.05.570(2)(b)(i) grants the superior court of Thurston County the authority to enter a declaratory judgment order on the validity of an agency rule "whether or not the petitioner has

first requested the agency to pass upon the validity of the rule in question." *See also* RCW 34.05.534(2) (a petitioner need not exhaust where another section of the APA or other statute states that exhaustion is not required). The parties agree that if Jolley's petition in this case was a rule challenge, exhaustion was not a prerequisite to the superior court's authority to hear the case. Instead, the heart of their dispute is whether Jolley's petition was a challenge to an alleged rule or whether it was actually a petition for review of the cease and desist order, in which case exhaustion would be required under RCW 34.05.534.

In our view, the superior court clearly had authority to consider the claims in Jolley's petition seeking review of the Insurance Commissioner's alleged "illegal rulemaking" under RCW 34.05.570(2)(b)(i). CP at 398. Jolley cited the correct APA provision that allows a rule challenge without exhaustion, and Jolley clearly sought a declaration that the alleged rule was invalid, the appropriate remedy should he succeed in showing the procedural defects he alleges. RCW 34.05.570(2)(c). A preliminary step in a rule challenge is a determination of whether the pronouncement being challenged is actually a rule to begin with. *See e.g., Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 672-73. And a rule challenge may be considered under RCW 34.05.570(2)(b), even while separate administrative proceedings are pending concerning the same subject matter. *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 646-47.

According to the Insurance Commissioner, the court correctly dismissed the petition because it lacked the authority to reverse the cease and desist order while Jolley's administrative appeal of that order was still pending. But Jolley did not seek to have the cease and desist order invalidated in his Thurston County petition, nor does he seek to do so in this appeal. And to the extent the Insurance Commissioner argues that his rule challenge is really a collateral attack on the

23

cease and desist order, we disagree—Jolley has brought a challenge to an alleged rule in the same way that the petitioners in *Northwest Pulp & Paper Ass'n* did. *See* 200 Wn.2d at 673-76. Under *Northwest Pulp & Paper Ass'n*, a party can allege that an agency has adopted what amounts to a generally applicable rule through channels outside of the APA's rule making procedures and therefore the "rule" is invalid. *Id.* That is what Jolley is doing here.

It is true that in addition to the invalidation of the rule, Jolley also sought injunctive relief from the cease and desist order that was at issue in the administrative appeal. In his appellate brief, Jolley abandons his request for injunctive relief under the Uniform Declaratory Judgments Act, acknowledging that review is available exclusively under the APA. And to the extent that Jolley's Thurston County petition also sought to challenge the Insurance Commissioner's agency action or inaction under RCW 34.05.570(4), that argument challenged what Jolley saw as general *enforcement* of the alleged rule, not a specific challenge to the cease and desist order. Moreover, Jolley has also abandoned that portion of his petition on appeal.

Finally, his request for relief in his Thurston County petition, when read carefully, sought only to halt the enforcement of the alleged rule and the alleged enforcement of the cease and desist order. He does not seek to have the cease and desist order itself declared invalid in this action. Instead, the only substantive argument that Jolley both made in his Thurston County petition and maintains on appeal is that the trial court improperly dismissed his rule challenge claim because he failed to exhaust administrative remedies. Jolley is correct that to the extent he brings a rule challenge under RCW 34.05.570(2), he need not exhaust administrative remedies to do so.

In sum, we hold that the trial court erred in dismissing the petition based on Jolley's failure to exhaust his administrative remedies prior to filing a rule challenge under RCW

No. 59466-8-II

34.05.570(2)(b)(i). We remand for the trial court to conduct a review of the alleged rule where the first step is to determine whether the agency statements that Jolley takes issue with were in fact a rule within the meaning of the APA. *See City of Tacoma*, 3 Wn.3d at 643; *Nw. Pulp & Paper Ass'n*, 200 Wn.2d at 673-76.

CONCLUSION

We reverse and remand in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

CRUSER, C.J.

25